THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : 3:20-CR-269 |
| v. | : (JUDGE MARIANI) |
| | : |
| THOMAS HARTLEY, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court are Defendant Thomas Hartley's two separately filed pretrial motions: "Motion to Dismiss Indictment as Duplicitous" (Doc. 36) and "Motion to Dismiss Indictment" (Doc. 39) (collectively, "the Motions"). Defendant is charged with theft of government funds in violation of 18 U.S.C. § 641, false, fictitious, or fraudulent claims in violation of 18 U.S.C. § 287, and three counts of false statements in violation of 18 U.S.C. § 1001(a)(3). (Doc. 11 at 4-8). Each Motion will be discussed in turn.

### II. FACTUAL BACKGROUND

The Federal Government provides a Basic Allowance for Quarters ("BAQ") (also referred to as Basic Allowance for Housing ("BAH")) for qualifying military service members to offset the cost of housing. (Doc. 11 at ¶ 2). BAQ payments are determined by a number of factors, including the service member's duty location or location of dependents, the member's pay grade, and whether they financially support their dependents. (*Id.*) The

Defense Travel Management Office ("DTMO") sets the rates for BAQ payments, which vary based on a service member's location. (*Id.* at ¶ 3).

Military service members must apply for BAH payments using the Department of the Army ("DA") Form 5960, titled "Authorization to Start, Stop, or Change Basic Allowance for Quarters (BAQ) and/or Variable Housing Allowance (VHA)." (*Id.* at ¶ 4; *see* Doc. 40-1 at 2). DA Form 5960 requires applicants to provide the number of dependents they financially support, the address of the dependents, and their relationship to the dependents. (*Id.*). The certification on the bottom of each DA Form 5960 reads:

> I certify ALL information regarding this authorization is correct. I will immediately notify the FAQ/HRO of any changes in the information above, due to divorce, marriage, death, living in government quarters, etc., which could affect by BAQ or VHA entitlement.
>
> IMPORTANT: Making a false statement or claim against the US Government is punishable by courts-martial. The penalty for willfully making a false claim or a false statement in connection with claims is a maximum fine of $10,000 or imprisonment for 5 years, or both.

(*See* Doc. 40-1 at 2). Service members filling out DA Form 5960 must sign their names directly below the certification statement indicating that all of the information included on the Form is correct. (*Id.*).

Defendant Thomas Hartley serves as an Officer in the New Jersey Army National Guard and is also employed as a Special Agent by the U.S. Department of Labor, Office of Inspector General, Office of Labor Racketeering and Fraud. (Doc. 11 at ¶ 1). At all times relevant to this matter, Defendant's primary residence was located at 58 Jonathans Way in

2

Henryville, PA 18332, which is within the Middle District of Pennsylvania. (*Id.* at ¶ 5; *see also* Government's Brief in Opposition to Defendant's Pretrial Motions, Doc. 59 at 6-7).

Defendant submitted three DA Forms 5960 on or about August 21, 2018 (Doc. 59-1), January 2, 2019 (Doc. 59-2), and June 1, 2020 (Doc. 59-3). On the first Form that Defendant submitted, Defendant listed his address as 26 Thomas Avenue in Shrewsbury, New Jersey 07702. (Doc. 59-1). On the next two Forms, Defendant listed his address as 151 Eggert Crossing Road in Lawrenceville, New Jersey 08648. (Doc. 59-2, Doc. 59-3). Both of these New Jersey residences are located in the District of New Jersey.

On all three Forms 5960, Defendant indicated that he supported two dependents: Hulya S. Hartley, his spouse, and Jaylon G. Hartley, his child. (*See* Doc. 59-1, Doc. 59-2, Doc. 59-3). Defendant listed the address of Hulya Hartley and Jaylon Hartley as 26 Thomas Avenue in Shrewsbury, New Jersey 07702 on all three Forms. (*Id.*). Additionally, Defendant checked the two certification boxes on each DA Form 5960 that are specific to a service member's financial support of dependents:

> I certify that I can provide, or willing to provide, adequate support for the above named dependents. I am aware that failure to support the above named dependents may result in stopping BAQ and recouping BAQ for any prior periods/nonsupport.
>
> IAW service regulations. I certify that the dependency status of my primary dependents, on whose behalf I am receiving BAQ, has not changed so as to affect my entitlement thereto for the period.

(*Id.*).

Although Defendant provided the New Jersey address for Hulya and Jaylon, they never resided in New Jersey, nor had Hulya ever heard of the New Jersey address Defendant provided on the Forms 5960. (Doc. 59 at 5). In fact, Hulya and Jaylon lived with Defendant at 58 Jonathans Way in Henryville, Pennsylvania between October 2016 and July 2018. (*Id.* at 6). In July 2018, Defendant and Hulya separated, and Hulya and Jaylon moved to a different residence in Henryville, Pennsylvania. (*Id.* at 6). Hulya indicated that after the separation, Defendant did not support her or Jaylon, even though he certified that he "c[ould] provide, or [was] willing to provide, adequate support" for his dependents. (*Id.* at 7; *see* Doc. 59-1, Doc. 59-2, Doc. 59-3).

The BAQ rates, as established by the DTMO, for Shrewsbury, New Jersey and Henryville, Pennsylvania are considerably different. In 2018, the monthly BAH rate for Shrewsbury, New Jersey was $3,348, while the BAH rate for Henryville was $1,845. (Doc. 59 at 6). Between October 1, 2018 and December 31, 2019, Defendant allegedly received approximately $10,044 in BAQ payments because he was paid at the Shrewsbury, New Jersey rate, which is roughly $4,509.00 more than BAQ payments paid at the Henryville, Pennsylvania rate. (Doc. 59 at 8). Defendant allegedly received a total of approximately $43,059.70 in BAQ payments between July 3, 2019 and July 21, 2020. (*Id.*). If Defendant had listed the Henryville, Pennsylvania address where Hulya and Jaylon allegedly resided, Defendant would have received $23,986.30 in BAQ payments. (*Id.*).

### III. ANALYSIS

Presently before the Court are Defendant's Motion to Dismiss Indictment as Duplicitous (Doc. 36) and Defendant's Motion to Dismiss Indictment (Doc. 39). Both Motions will be addressed in the instant Opinion, and each Motion will be discussed in turn.

#### *a. Motion to Dismiss Indictment as Duplicitous (Doc. 36)*

In his Motion to Dismiss Indictment as Duplicitous (Doc. 36), Defendant argues for the dismissal of Counts 1 and 2 of the Indictment (Doc. 11). According to Defendant, Counts 1 and 2 "purport to be based upon conduct spanning nearly two years and involving the completion and submission of multiple DA Army Forms 5960," and this "duplicitous charging implicates serious concerns of unfairness to Maj. Hartley requiring dismissal of Counts I and II." (Doc. 37 at 1).

"Duplicity is the improper joining of distinct and separate offenses in a single count." *United States v. Haddy*, 134 F.3d 542, 548 (3d Cir. 1998) (citing *United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975)). "[T]he Third Circuit has determined that duplicitous charging is impermissible only where it risks unfairness to the defendant." *United States v. Salerno*, 2011 WL 6141017, at * 3 (M.D.Pa. Dec. 9, 2011) (citing *United States v. Root*, 585 F.3d 145, 155 (3d Cir. 2009)). "Duplicitous counts may conceal the specific charges, prevent the jury from deciding guilt or innocence with respect to a particular offense, exploit the risk of prejudicial evidentiary rulings, or endanger fair sentencing." *Haddy*, 134 F.3d at 548 (internal citations omitted).

The Court begins its duplicity analysis by determining "the allowable unit of prosecution to decide whether the indictment properly charges a violation of the pertinent statute. To do so, we inquire into Congressional intent by examining the language of the statute." *Root*, 585 F.3d at 150. Count 1 of the Indictment charges Defendant with theft of government funds in violation of 18 U.S.C. § 641 and Count 2 of the Indictment charges Defendant with false, fictitious, or fraudulent statements in violation of 18 U.S.C. § 287. (Doc. 11 at 4-5). Both Section 641 and Section 287 are silent as to the allowable unit of prosecution applicable to each offense. Thus, the Court must look elsewhere in the statutes to discern congressional intent for the allowable unit of prosecution for each offense.

As explained by the Third Circuit in *United States v. Moyer*, "[c]ourts have consistently rejected duplicity arguments when the statute employs 'any' as a signifier regarding the allowable unit of prosecution.'" 674 F.3d 192, 204 (3d Cir. 2012) (collecting cases) (analyzing 18 U.S.C. § 1519, which "criminalizes the falsifying of 'any record'"). Here, the two statutes which Defendant is charged with violating in Count 1 and Count 2 of the Indictment both contain the signifier "any." Section 641 criminalizes embezzling, stealing, purloining, or converting "*any* record, voucher, money, or thing of value of the United States or any department or agency thereof." 18 U.S.C. § 641 (emphasis added). Section 287 criminalizes the making or presenting of "*any* claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent." 18 U.S.C. § 287 (emphasis added). The use of "any" in each statute indicates

that Congress did not intend to require that each alleged violation of Section 641 and Section 287 would have to be charged separately. Instead, "any" demonstrates congressional intent for multiple violations of Section 641 and Section 287 to be able to be combined into one count. *See Moyer*, 674 F.3d at 204 (collecting cases).

Furthermore, Federal Rule of Criminal Procedure 7(c)(1) explains that a count in an indictment "may allege that the means by which the Defendant committed the offense are unknown or that the defendant committed it by *one or more* specified means." FED. R. CRIM. P. 7(c)(1) (emphasis added); *see also Root*, 585 F.3d at 154. Both Counts 1 and 2 allege that Defendant prepared or submitted more than one Form 5960, which is the "one or more specified means" by which Defendant allegedly violated Section 641 and Section 287. (Doc. 11 at 4-5). Therefore, the Government's decision to charge multiple alleged violations of Section 641 in Count 1 and multiple alleged violations of Section 287 in Count 2 is in conformance with Rule 7(c)(1). *See Moyer*, 674 F.3d at 205.

Finally, the Court must also consider the policy concerns traditionally associated with duplicitous charges. *Id.*; *see also Root*, 585 F.3d at 154. "'If the doctrine of duplicity is to be more than an exercise in mere formalism, it must be invoked only when an indictment affects the policy considerations' that underlie that doctrine." *Root*, 585 F.3d at 155 (quoting *United States v. Murray*, 618 F.2d 892, 897 (2d Cir. 1980)). The Third Circuit in *Root* explained that:

> The purposes of the prohibition against duplicity include: (1) avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty

7

> as to one crime and a finding of not guilty as to another; (2) avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged; (3) assuring the defendant adequate notice; (4) providing the basis for appropriate sentencing; and (5) protecting against double jeopardy in a subsequent prosecution.

*Root*, 585 F.3d at 154 ("An assessment of such policy considerations is critical to any duplicity analysis, for fundamental fairness and due process of law may prohibit combining what could be several independent charges into a single count[.]"). Defendant argues that "there is a risk that a jury may find Defendant guilty with respect to 18 U.S.C. § 641 or 18 U.S.C. § 287 as to the completion and submission of one DA Form 5960, but not another," "there is a serious risk that the jury may convict without the required unanimity," the charging of Counts 1 and 2 are "inadequate to put Defendant on notice of the basis for the criminal charges and to provide a basis for sentencing," and that there "the duplicitous charging in Counts I and II fails to protect Defendant against double jeopardy." (Doc. 37 at 6). In response, the Government argues that "any concerns about duplicity can be cured by appropriate jury instructions and special interrogatories." (Doc. 59 at 26).

    The Court agrees with the Government. At trial, the Court can and will provide clear jury instructions that explain what the Government must prove in relation to each count of the Indictment and the specific allegations therein, and the Court will utilize a directed verdict form containing special interrogatories which will conform to those instructions. *Salerno*, 2011 WL 6141017, at *3 ("Any concerns [Defendant] has about the concealment of a not guilty verdict or the unanimity of jurors can be cured by appropriate jury instructions

and special interrogatories."); *see also Moyer*, 674 F.3d at 205 ("The jury instructions were crystal clear that if the jury found Nestor 'guilty of an offense[,] every [juror] must agree that the government has overcome the presumption of innocence with evidence that proves each element of that offence beyond a reasonable doubt.'"). These steps will protect Defendant against the jury finding him "guilty with respect to 18 U.S.C. § 641 or 18 U.S.C. § 287 as to the completion and submission of one DA Form 5960, but not another" and will ensure a unanimous jury verdict. (*See* Doc. 37 at 6).

    The Third Circuit has stated that "a single count of an indictment should not be found impermissibly duplicitous whenever it contains several allegations that could have been stated as separate offenses, but only when the failure to do so risks unfairness to the defendant." *Id.* at 155; *see also United States v. Gray*, 2012 WL 1554649, at *2 (W.D.Pa. May 1, 2012) (explaining that "simply because offenses are not multiplicitous does not mean that prosecutors must always charge them in separate counts"). Here, the risk of unfairness to Defendant at any stage of the proceeding, including trial and sentencing, is slight because "the alleged wrong is a single scheme to defraud that can be proven by evidence relating to similar conduct." *Root*, 585 F.3d at 145; *see also Gray*, 2012 WL 1554649, at *2 (denying the defendant's duplicity argument for an 18 U.S.C. § 641 charge where the indictment charged an alleged scheme of conduct whereby "defendant applied for SSI benefits on behalf of her children, then set up a scheme in which she embezzled and converted each check to her own use"); *United States v. Atiyeh*, 330 F.Supp.2d 499, 503-04

(E.D.Pa. 2004). Defendant allegedly participated in a "continuous or very nearly continuous" course of conduct where the evidence for each count is practically identical, and it would be "logically inconsistent for the jury to find [Defendant] guilty" in light of his conduct relating to one of the three DA Forms 5960, but not guilty for his conduct relating the other two DA Forms 5960. *See Root*, 585 F.3d at 154. In fact, the current charging decision likely benefits Defendant in that he is only charged with one count of 18 U.S.C. § 641 and one count of 18 U.S.C. § 287, as opposed to three counts of each. *See id.* at 155 ("In such circumstances, duplicity may actually inure to a defendant's benefit by limiting the maximum penalties he might face if he were charged and convicted on separate counts for what amounts to a single scheme."); *see also Salerno*, 2011 WL 6141017, at * 3.

Defendant's argument, unsupported by any caselaw, that charging multiple violations of Section 641 and Section 287 in a single count is duplicitous because Section 641 and Section 287 do not include the word "scheme" is unpersuasive. (Doc. 37 at 5). Many cases have found that charging multiple violations of a statute in a single count is not duplicitous even when the statute at issue does not include the word "scheme." *See, e.g., Moyer*, 674 F.3d at 204-05 (denying the defendant's duplicity challenge to a single count of 18 U.S.C. § 1519 where the count charged multiple violations of the statute in one count); *Root*, 585 F.3d at 154-55 (denying the defendant's duplicity challenge to a count that charged multiple violations of 18 U.S.C. § 7201 in a single count); *Gray*, 2012 WL 1554649, at *2 (denying the defendant's duplicity argument to a single count of 18 U.S.C. § 641 where the count

10

charged multiple violations of the statute in one count).  Although the Indictment does not use the word "scheme" to describe Defendant's conduct, Counts 1 and 2 reference a scheme or pattern of conduct because they allege that Defendant made the same false claim – that the permanent address of Defendant or his dependents was in New Jersey – on three separate DA Forms 5960.  (See Doc. 11 at 4-5).  The alleged claim remained consistent across all three DA Forms 5960 and, thus, it was a continuous course of conduct. See Root, 585 F.3d at 153 (finding that the tax evasion charges were not duplicitous due, in part, because "each year's [tax] evasion resulted from the same conduct").

Though the Government could have charged Defendant with three separate counts of violating Section 641 and three separate counts of violated Section 287 stemming from the same pattern of events alleged in the Indictment, Section 641 and Section 287 do not require the Government to do so.  The Government's decisions to charge multiple alleged violations of Section 641 in Count 1 and multiple alleged violations of Section 287 in Count 2 were not duplicitous.  Thus, Defendant's Motion to Dismiss Indictment as Duplicitous (Doc. 36) will be denied.

### b. Motion to Dismiss Indictment (Doc. 39)

Next, the Court considers Defendant's Motion to Dismiss Indictment (Doc. 39) in which he maintains that all five counts in the Indictment should be dismissed for failure to state an offense pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v). (Doc. 39 at 1).  Defendant argues:

> The government alleges in the Indictment against Maj. Hartley that the factual predicate for each of the five offenses was Maj. Hartley's allegedly false statement of the address of his dependents, his wife and daughter, on forms relating to BAQ. However, Maj. Hartley is a member of the National Guard, and so, is considered a Reserve Component service member, rather than an Active Duty service member. BAQ payments for Reserve Component service members are not determined by the residence of the service member's dependents. Thus, even assuming that the address Maj. Hartley designated for his dependents was false, such statement would be immaterial to the calculation of his BAQ payments and therefore, cannot constitute a criminal offense relating to any alleged overpayment of BAQ funds.

(Doc. 40 at 2). The Government responds that all five counts of the Indictment satisfy Rule 7 of the Federal Rules of Criminal Procedure and the Third Circuit's interpretation of the Rule's requirements. (Doc. 59 at 10-22). Specifically, the Government claims that the Indictment is sufficient because each count "tracks the statutory language of the charged statute," "indicates the manner in which the defendant committed the offense – *i.e.*, by submitting a document containing false information," and each count "informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." (Doc. 59 at 21 (internal citations and quotations omitted)).

In *United States v. Bergrin*, 650 F.3d 257 (3d Cir. 2011), the Court of Appeals for the Third Circuit specifically "set forth the requirements of a well-pleaded indictment and the rules governing a district Court's review of a motion to dismiss." *Id.* at 264. As to the requirements for a federal indictment, the Circuit Court explained that

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The Supreme Court has explained that "the Federal Rules 'were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure.' ... While detailed allegations might well have been required under common-law pleading rules, ... they surely are not contemplated by Rule 7(c)(1)." *United States v. Resendiz–Ponce,* 549 U.S. 102, 110, 127 S.Ct. 782, 166 L.Ed.2d 591 (2007) (citations omitted) (quoting *United States v. Debrow,* 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92 (1953)). Likewise, we have held:

> [A]n indictment [is] sufficient so long as it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Vitillo,* 490 F.3d 314 (3d Cir.2007) (internal quotation marks omitted). Moreover, "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *United States v. Rankin,* 870 F.2d 109, 112 (3d Cir.1989).

*United States v. Kemp,* 500 F.3d 257, 280 (3d Cir.2007).

*Bergrin,* 650 F.3d at 264.

Regarding the district court's review of a motion to dismiss, *Bergrin* stated that

[t]o determine whether an indictment "contains the elements of the offense intended to be charged," a district court may look for more than a mere "recit[ation] in general terms [of] the essential elements of the offense." *United States v. Panarella,* 277 F.3d 678, 685 (3d Cir.2002). A district court must find that "a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *Id.; see also United States v. Schiff,* 602 F.3d 152, 162–66 (3d Cir.2010) (indictment alleging "failure to rectify misstatements of others" does not, as a matter of law, state an offense under securities statute that criminalizes omissions of information); *Gov't of the V.I v.*

13

> *Greenidge,* 600 F.2d 437, 438–40 (3d Cir.1979) (indictment alleging assault on male companion of a rape victim does not, as a matter of law, state an offense under statute that criminalizes assaulting a rape victim).
>
> A ruling on a motion to dismiss is not, however, "a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis,* 230 F.3d 659, 660–61 (3d Cir.2000) (citations omitted). "Evidentiary questions"—such as credibility determinations and the weighing of proof—"should not be determined at th[is] stage." *United States v. Gallagher,* 602 F.2d 1139, 1142 (3d Cir.1979). Rather, "[i]n considering a defense motion to dismiss an indictment, the district court [must] accept[ ] as true the factual allegations set forth in the indictment." *United States v. Besmajian,* 910 F.2d 1153, 1154 (3d Cir.1990) (citing *Boyce Motor Lines v. United States,* 342 U.S. 337, 343 n. 16, 72 S.Ct. 329, 96 L.Ed. 367 (1952)).

*Bergrin,* 650 F.3d at 264–65.

Applying these principles to the Indictment in this case, the Indictment includes the statutory and regulatory language of 18 U.S.C. § 641 for Count 1, 18 U.S.C. § 287 for Count 2, and 18 U.S.C. 1001(a)(3) for Counts 3, 4, and 5. (Doc. 11 at 4-8). Further, the Indictment contains "sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution," *Rankin,* 870 F.2d at 112, in that the factual circumstances giving rise to the charges are identified by date, time, and conduct alleged to violate the law. (Doc. 11 at 1-8).

In particular, Count 1, which charges Defendant with theft of government funds in violation of 18 U.S.C. § 641, alleges that Defendant (1) "did knowingly and willfully" (2) "steal, purloin and convert to his own use" (3) "approximately $23,582 in Basic Allowance for Quarters" (4) "to which the defendant was not entitled, such funds being the property of the United States" (5) "by falsely claiming on multiple DA Forms 5960, submitted to the

14

Department of the Army, that his dependents resided in Shrewsbury, New Jersey, when in fact, as the defendant well knew, his dependents resided in Henryville, Pennsylvania." (*Id.* at 4). Next, Count 2 charges Defendant with false, fictitious, or fraudulent statements in violation of 18 U.S.C. § 287 and alleges that Defendant (1) "did knowingly and willfully" (2) "make and present to the Department of the Army" (3) "a claim against the United States" (specifically, a claim for BAQ funds) (4) "knowing such claim to be false, fictitious, and fraudulent[.]" (*Id.* at 5). Finally, Counts 3, 4, and 5, all of which charge defendant with false statements in violation of 18 U.S.C. § 1001(a)(3), allege that Defendant (1) "did knowingly and willfully" (2) "make and use a false writing and document" (3) "knowing the same to contain a materially false, fictitious, and fraudulent statement and entry" (3) "in a matter within the jurisdiction of the executive branch of the Government of the United States[.]" (*Id.* at 6-8). All five counts closely track the language and contain the essential elements of the charged offense. *See Bergin*, 650 F.3d at 264 (quoting *Vitillo*, 490 F.3d at 321).

Defendant maintains that the facts alleged in the Indictment fall beyond the scope of each criminal statute which he is charged with violating and the "allegations in the indictment are insufficient to establish that Major Hartley committed any of the charged offenses." (Doc. 40 at 6). Defendant claims that DA Form 5960 determines BAQ payments based on a service member's permanent address, not that of his or her dependents, and argues that because the Indictment charges him with the falsification of his dependents' address instead of his own address, the Indictment is deficient. (*Id.*). Defendant devotes a

15

significant portion of his Motion discussing the mechanisms of BAQ funds and how the Army allocates and distributes such funds to support his argument that the Indictment should be dismissed. (*See generally id.*; Doc. 71 at 5). In response, the Government claims that each count of the Indictment sufficiently states an offense and that the argument Defendant presents is his Motion is one of materiality. (Doc. 59 at 18-21).

Defendant's argument attacks the charges themselves, not the sufficiency of the Indictment. Defendant's Motion is premised upon an affirmative defense that Defendant's alleged conduct was not illegal due to the manner in which BAQ funds are allocated, which is an argument that is not "capable of determination without the trial of the general issue." *United States v. Gallagher*, 602 F.2d 1139, 1142 (3d Cir. 1979) (quoting *United States v. Knox*, 396 U.S. 77, 83 n.7 (1969)). While Defendant may raise this defense at trial, "a pretrial motion to dismiss is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000).

Accordingly, Defendant's Motion to Dismiss Indictment (Doc. 39) will be denied.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's Motion to Dismiss Indictment as Duplicitous (Doc. 36) and Defendant's Motion to Dismiss Indictment (Doc. 39) will be denied.

Robert D. Mariani
United States District Judge