**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | **: 3:20-CR-269** |
| **v.** | **: (JUDGE MARIANI)** |
| | : |
| **THOMAS HARTLEY,** | : |
| | : |
| **Defendant.** | : |

### MEMORANDUM OPINION

#### I. INTRODUCTION

Presently before the Court is Defendant Thomas Hartley's Motion to Change Venue

(Doc. 41). Defendant was charged in a five-count Indictment with theft of government funds

in violation of 18 U.S.C. § 641, false, fictitious, and fraudulent claims in violation of 18

U.S.C. § 287, and three counts of false statements in violation of 18 U.S.C. § 1001(a)(3).

(Doc. 11 at 4-8). The present Motion seeks to change venue from the Middle District of

Pennsylvania to the District of New Jersey for all five counts with which Defendant is

charged.

For the reasons discussed below, the Court concludes that the Government has met

its burden to prove that venue is proper in the Middle District of Pennsylvania for Counts 1,

3, 4, and 5 of the Indictment, but it has not met its burden to prove that venue is proper in

the Middle District of Pennsylvania for Count 2. Accordingly, Defendant's Motion to Change

Venue will be denied as to Counts 1, 3, 4, and 5 and granted as to Count 2.

## II. FACTUAL BACKGROUND

The Federal Government provides a Basic Allowance for Quarters ("BAQ") (also referred to as Basic Allowance for Housing ("BAH")) for qualifying military service members to offset the cost of housing. (Doc. 11 at ¶ 2). BAQ payments are determined by a number of factors, including the service member's duty location or location of dependents, the member's pay grade, and whether they financially support their dependents. (*Id.*) The Defense Travel Management Office ("DTMO") sets the rates for BAQ payments, which vary based on a service member's location. (*Id.* at ¶ 3).

Military service members must apply for BAH payments using the Department of the Army ("DA") Form 5960, titled "Authorization to Start, Stop, or Change Basic Allowance for Quarters (BAQ) and/or Variable Housing Allowance (VHA)." (*Id.* at ¶ 4; *see* Doc. 40-1 at 2). DA Form 5960 requires applicants to provide the number of dependents they financially support, the address of the dependents, and their relationship to the dependents. (*Id.*). The certification on the bottom of each DA Form 5960 reads:

> I certify ALL information regarding this authorization is correct. I will immediately notify the FAQ/HRO of any changes in the information above, due to divorce, marriage, death, living in government quarters, etc., which could affect by BAQ or VHA entitlement.
>
> IMPORTANT: Making a false statement or claim against the US Government is punishable by courts-martial. The penalty for willfully making a false claim or a false statement in connection with claims is a maximum fine of $10,000 or imprisonment for 5 years, or both.

(*See* Doc. 40-1 at 2). Service members filling out DA Form 5960 must sign their names directly below the certification statement indicating that all of the information included on the Form is correct. (*Id.*).

Defendant Thomas Hartley serves as an Officer in the New Jersey Army National Guard and is also employed as a Special Agent by the U.S. Department of Labor, Office of Inspector General, Office of Labor Racketeering and Fraud. (Doc. 11 at ¶ 1). At all times relevant to this matter, Defendant's primary residence was located at 58 Jonathans Way in Henryville, PA 18332, which is within the Middle District of Pennsylvania. (*Id.* at ¶ 5; *see also* Government's Brief in Opposition to Defendant's Pretrial Motions, Doc. 59 at 6-7).

Defendant submitted three DA Forms 5960 on or about August 21, 2018 (Doc. 59-1), January 2, 2019 (Doc. 59-2), and June 1, 2020 (Doc. 59-3). On the first Form that Defendant submitted, Defendant listed his address as 26 Thomas Avenue in Shrewsbury, New Jersey 07702. (Doc. 59-1). On the next two Forms, Defendant listed his address as 151 Eggert Crossing Road in Lawrenceville, New Jersey 08648. (Doc. 59-2, Doc. 59-3). Both of these New Jersey residences are located in the District of New Jersey.

On all three Forms 5960, Defendant indicated that he supported two dependents: Hulya S. Hartley, his spouse, and Jaylon G. Hartley, his child. (*See* Doc. 59-1, Doc. 59-2, Doc. 59-3). Defendant listed the address of Hulya Hartley and Jaylon Hartley as 26 Thomas Avenue in Shrewsbury, New Jersey 07702 on all three Forms. (*Id.*). Additionally,

Defendant checked the two certification boxes on each DA Form 5960 that are specific to a

service member's financial support of dependents:

> I certify that I can provide, or willing to provide, adequate support for the above named dependents.  I am aware that failure to support the above named dependents may result in stopping BAQ and recouping BAQ for any prior periods/nonsupport.

> IAW service regulations.  I certify that the dependency status of my primary dependents, on whose behalf I am receiving BAQ, has not changed so as to affect my entitlement thereto for the period.

(*Id.*).

Although Defendant provided the New Jersey address for Hulya and Jaylon, they

never resided in New Jersey, nor had Hulya ever heard of the New Jersey address

Defendant provided on the Forms 5960.  (Doc. 59 at 5).  In fact, Hulya and Jaylon lived with

Defendant at 58 Jonathans Way in Henryville, Pennsylvania between October 2016 and

July 2018.  (*Id.* at 6).  In July 2018, Defendant and Hulya separated, and Hulya and Jaylon

moved to a different residence in Henryville, Pennsylvania.  (*Id.* at 6).  Hulya indicated that

after the separation, Defendant did not support her or Jaylon, even though he certified that

he "c[ould] provide, or [was] willing to provide, adequate support" for his dependents.  (*Id.* at

7; *see* Doc. 59-1, Doc. 59-2, Doc. 59-3).

The BAQ rates, as established by the DTMO, for Shrewsbury, New Jersey and

Henryville, Pennsylvania are considerably different.  In 2018, the monthly BAH rate for

Shrewsbury, New Jersey was $3,348, while the BAH rate for Henryville was $1,845.  (Doc.

59 at 6).  Between October 1, 2018 and December 31, 2019, Defendant allegedly received

4

approximately $10,044 in BAQ payments because he was paid at the Shrewsbury, New

Jersey rate, which is roughly $4,509.00 more than BAQ payments paid at the Henryville,

Pennsylvania rate. (Doc. 59 at 8). Defendant allegedly received a total of approximately

$43,059.70 in BAQ payments between July 3, 2019 and July 21, 2020. (*Id.*). If Defendant

had listed the Henryville, Pennsylvania address where Hulya and Jaylon allegedly resided,

Defendant would have received $23,986.30 in BAQ payments. (*Id.*).

### III. ANALYSIS

In his Motion for a Change of Venue (Doc. 41), Defendant argues that, "[p]ursuant to

the United States Constitution, the Federal Rules of Criminal Procedure, and well-

established case law, prosecution of Hartley in the Middle District of Pennsylvania is

improper where the essential element of every crime for which he has been charged was

committed in New Jersey." (Doc. 42 at 7). Defendant attached a Declaration to his Motion

in which he attests that he prepared and electronically filed all three Forms 5960 at issue

from New Jersey and that the BAQ funds he received were deposited into his checking

account at the USAA Federal Savings Bank in San Antonio, Texas. (Doc. 41-1 at 2). The

Government opposes Defendant's Motion and argues that venue is proper in the Middle

District of Pennsylvania because Defendant used the BAQ funds "to pay his bills, buy

groceries and merchandise, dine at restaurants, spend at casinos and make cash

withdrawals all within the Middle District of Pennsylvania." (Doc. 59 at 29). The

Government contends that Defendant "submitted false forms for the purpose of obtaining

5

money" and, once the money was deposited into his bank account, Defendant "converted the funds to his own use *here* in Pennsylvania." (Doc. 59 at 33-34). In particular, the Government argues:

> Aside from the fact that the falsity of Hartley's statements to the Army is *proven* by the fact that he resides in Pennsylvania, and that the *evidence* of that fact is found in Pennsylvania, under Hartley's theory, he could travel from neighboring Monroe County into New Jersey, commit financial fraud there, have the funds sent to another state, and then drive back home to Pennsylvania and access and spend the fruits of his ill-gotten gain – all the while avoiding prosecution in Pennsylvania where he lives and profits and benefits from his crime.

(*Id.* at 34). Defendant does not refute this assertion and instead argues that an effects-based venue analysis in this case "belies logic" and is "borderline preposterous." (Doc. 72 at 1, 3). Defendant contends that "the Government has cited no evidence to support that venue is proper based solely on a district *benefitting* from an alleged crime." (*Id.* at 1).

The United States Constitution safeguards a defendant's right to proper venue in criminal trials. *See United States v. Baxter*, 884 F.2d 734, 736 (3d Cir. 1989). Indeed, both Article III and the Sixth Amendment require that a defendant's criminal trial take place in the state where the alleged crime occurred. *See* U.S. Const. art. iii, § 2, cl. 3 ("[T]he trial of all crimes . . . shall be held in the State where the said Crimes shall have been committed."); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."). Rule 18 of the Federal Rules of Criminal Procedure reflects these constitutional mandates and provides that "the government must prosecute an offense in a

6

district where the offense was committed." *United States v. Cabrales*, 524 U.S. 1, 6 (1998);

FED. R. CRIM. P. 18.

"The Government bears the burden of proving proper venue by a preponderance of

the evidence and venue must be proper for each count of the indictment." *United States v.*

*Root*, 585 F.3d 145, 155 (3d Cir. 2009) (citing *United States v. Perez*, 280 F.3d 318, 328-30

(3d Cir. 2002)).  It is well settled that "Congress has the power to lay out the elements of a

crime to permit prosecution in one or any of the districts in which the crucial elements are

performed." *Id.* at 156 (citing *Perez*, 280 F.3d at 329).  The Third Circuit explained in *United*

*States v. Auernheimer* that

> Congress may prescribe specific venue requirements for particular crimes.
> [*United States v. Pendelton*, 658 F.3d 299, 202 (3d Cir. 2011)].  Where it has
> not, . . . we must determine the crime's *locus delecti*. *Id.*; *see also Black's Law*
> *Dictionary* 1025 (9th ed. 2009) (defining *locus delecti* as "the place where an
> offense was committed").  "[T]he locus delecti must be determined from the
> nature of the crime alleged and the location of the act or acts constituting it."
> *United States v. Anderson*, 328 U.S. 699, 703, 66 S. Ct. 1213, 90 L.Ed. 1529
> (1946); *accord United States v. Rodriguez-Moreno*, 526 U.S. 275, 279, 119 S.
> Ct. 1239, 143 L.Ed.2d 388 (1999); *Cabrales*, 524 U.S. at 6-7, 118 S.Ct. 1772.
> To perform this inquiry, we "must [1] initially identify the conduct constituting
> the offense . . . and then [2] discern the location of the commission of the
> criminal acts." *Rodriguez-Moreno*, 526 U.S. at 279, 119 S.Ct. 1239.  Venue
> should be narrowly construed.  *Johnson*, 323 U.S. at 276, 65 S.Ct. 249.

748 F.3d 525, 532-33 (3d Cir. 2014).  "Courts engaging in this analysis must distinguish

between a statute's essential conduct elements and its circumstance elements.  Only

essential conduct elements can provide the basis for venue; circumstance elements

cannot." *United States v. Brennan*, 452 F.Supp.3d 225, 234 (E.D.Pa. 2020) (citing

7

*Aurenheimer*, 748 F.3d at 533) (internal citations and quotations omitted).  An essential conduct element is an element that describes actions prohibited by a criminal statute while circumstance elements refer to facts that existed at the time the prohibited actions occur. *Id.* (internal citations and quotations omitted).

In cases involving continuing offenses, 18 U.S.C. § 3237(a) provides that such matters may be prosecuted "in any district in which such offense was begun, continued or completed."  "When the crime consists of distinct acts occurring in different places, venue is proper where any part of the crime occurs."  *Pendleton*, 659 F.3d at 302.

Here, Defendant is charged in five-count indictment with violating 18 U.S.C. §§ 641, 287, and 1001(a)(3).  (Doc. 11 at 4-8).  Defendant claims that venue in the Middle District of Pennsylvania is improper for all five counts and requests this Court to transfer his case to the District of New Jersey.  (Doc. 42 at 1).  Each offense will be discussed in turn.

### a. Count 1: 18 U.S.C. § 641

Count 1 of the Indictment charges Defendant with theft of government funds in violation of 18 U.S.C. § 641.  Section 641 provides, in relevant part:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; . . . Shall be fined under this title or imprisoned not more than ten years, or both[.]

18 U.S.C. § 641.

8

To determine whether venue is proper in the Middle District of Pennsylvania, the Court must ascertain the *locus delecti* of Section 641, which first requires the Court to identify the conduct that formed the basis of the offense. *Auernheimer*, 748 F.3d at 532 (citing *Rodriguez-Moreno*, 526 U.S. at 279). Defendant argues that "the act giving rise to the charge of a violation of 18 U.S.C. § 641 was Hartley's purportedly false claims on multiple DA Forms 5960 which he submitted to the Department of the Army," which, according to Defendant, were prepared and electronically filed from New Jersey. (Doc. 42 at 5; Doc. 41-1 at 2). In response, the Government argues that the alleged false statements on the Forms 5960 were intended to produce funds, which he accessed "on a regular and continuous basis from Pennsylvania" after they were deposited into his Texas-based bank account. (Doc. 59 at 33). The Government contends that Defendant "converted the funds for his own use *here* in Pennsylvania" and "[t]he effects of Hartley's crimes were felt in the Middle District of Pennsylvania," so "venue is proper here." (*Id.* at 33-34).

Defendant's argument that the preparation and filing of Forms 5960 is the conduct that formed the basis for Defendant's Section 641 charge is incorrect because it ignores the text of the statute. The acts of preparing and filing Forms 5960 that allegedly contain false statements, without more, are insufficient to violate Section 641. Indeed, Section 641 requires an act of embezzlement, theft, purloinment, or knowing conversion "to his use or the use of another, . . . of any record, voucher, money, or thing of value of the United States or of any department or agency thereof," which is not satisfied by the conduct of

9

preparing and submitting the Forms 5960.  *See* 18 U.S.C. § 641.  Defendant's Motion and

his Reply do not reference Defendant's alleged acts of theft of Government funds as alleged

in Count 1 of the Indictment, and instead focus only on the location from which Defendant

allegedly prepared and filed the Forms 5960.  (*See* Doc. 42; Doc. 72).

Count 1 clearly alleges that Defendant's alleged conduct giving rise to the Section

641 charge was that Defendant "did knowingly and willfully steal, purloin and convert to his

own use approximately $23,582 in Basic Allowance for Quarters (BAQ) funds" and that the

alleged manner in which Defendant accomplished this was through the submission of

falsified Forms 5960 to the Department of the Army.  (Doc. 11 at 4).  Moreover, the

Government argues in its Opposition to Defendant's Motion for Change of Venue that while

Defendant may have prepared and submitted the Forms 5960 from New Jersey and the

funds may have been deposited into a Texas bank account, Defendant "converted the

[BAQ] funds to his own personal use *here* in Pennsylvania."  (Doc. 59 at 34).   The core of

the Government's argument is that Defendant allegedly began the crime in New Jersey

where he prepared and submitted the Forms 5960 and completed the crime in the Middle

District of Pennsylvania where he "converted the funds to his own use."  (*See id.*).

As previously mentioned, "any offense against the United States begun in one

district and completed in another, or committed in more than one district, may be inquired of

and prosecuted in any district in which such offense was begun, continued, or completed."

18 U.S.C. § 3237(a).  The Government argues that because Defendant's alleged conduct

10

began in the District of New Jersey and was completed in the Middle District of

Pennsylvania, venue is proper in either district.  Defendant's flawed argument that

Defendant's preparation and submission of the Forms 5960 as the conduct constituting the

offense is unpersuasive, and Defendant fails to otherwise refute the Government's assertion

that Defendant completed the alleged Section 641 violation in the Middle District of

Pennsylvania.  Accordingly, the Court is satisfied that the Government has proven by a

preponderance of the evidence that venue is proper in the Middle District of Pennsylvania

for Count 1.

### ii. Count 2: 18 U.S.C. § 287

Count 2 of the Indictment charges Defendant with false, fictitious, and fraudulent

claims in violation of 18 U.S.C. § 287.  (Doc. 11 at 5).  Section 287 provides:

> Whoever makes or presents to any person or officer in the civil, military, or
> naval service of the United States, or to any department or agency thereof, any
> claim upon or against the United States, or any department or agency thereof,
> knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not
> more than five years and shall be subject to a fine in the amount provided in
> this title.

18 U.S.C. § 287.  Congress did not include a venue provision in Section 287, so the Court

must begin its venue analysis by determining the conduct that forms the basis for the

offense.  *Auernheimer*, 748 F.3d at 532 (citing *Rodriguez-Moreno*, 526 U.S. at 279).

Defendant makes the same argument for why venue is improper for Count 2 as he did for

Count 1, asserting that "the act giving rise to the charge of a violation of 18 U.S.C. § 287

was Hartley's purportedly false claims on multiple DA Forms 5960 which he submitted to the

Department of the Army," which took place in New Jersey. (Doc. 42 at 6). The Government argues that Defendant submitted the falsified Forms 5960 "for the purpose of obtaining money" and once he accomplished this goal, "he accessed those funds on a regular and continuous basis from Pennsylvania." (Doc. 59 at 33-34). According to the Government, venue is proper in the Middle District of Pennsylvania because it felt the effects of Defendant's alleged conduct. (*Id.* at 34).

The Government's effects-based venue argument is inapplicable to Count 2 of the Indictment because Congress did not define Section 287 in terms of its effects. Section 287 prohibits the making or presenting of a claim to the United States or a department thereof that one knows is false, fictitious, or fraudulent. It does not speak to the effects of the false, fictitious, or fraudulent statement – it only prohibits the making or presenting of such statement. *See Auernheimer*, 748 F.3d at 537-38 ("Congress, however, did not define a violation of § 1030(a)(2)(C) in terms of its effects. The statute simply criminalizes accessing a computer without authorization and obtaining information. It punishes only the actions that the defendant takes to access and obtain. It does not speak in terms of the effects on those whose information is obtained.").

The substance of Defendant's alleged false, fictitious, or fraudulent claim is that Defendant "submitted to the Department of the Army DA Forms 5960 in which he falsely claimed that his dependents resided in Shrewsbury, New Jersey, when in fact, as the defendant well knew, his dependents resided in Henryville, Pennsylvania." (Doc. 11 at 5).

12

These details regarding Defendant's allegedly false, fictitious, or fraudulent claim is a "circumstance element" of the offense, not an "essential conduct element," and venue can only be premised upon essential conduct elements of an offense. *Brennan*, 452 F.Supp.3d at 234 ("Only 'essential conduct elements' can provide the basis for venue; 'circumstance elements' cannot." (internal citations and quotations omitted)). Accordingly, the Court cannot rely on an effects-based analysis to establish venue for Count 2 of the Indictment.

Because venue cannot be premised on the effects of Defendant's alleged conduct, venue is proper only where the "offense was begun, continued, or completed." 18 U.S.C. § 3237(a). Defendant alleges that "[t]he DA Forms 5960 referenced in the Indictment were prepared and filed electronically from" New Jersey. (Doc. 41-1 at 2). According to Defendant, the conduct constituting the offense alleged in Count 2 of the Indictment all took place in New Jersey, so venue can only be proper in the District of New Jersey. (*Id.*). In its Opposition to Defendant's Motion, the Government does not refute Defendant's allegation that he prepared and filed the Forms 5960 from New Jersey and, in fact, the Government appeared to accept this. (*See* Doc. 59 at 29 ("Assuming Hartley submitted the Forms 5960 electronically from New Jersey . . .")). The Government's sole argument is that an effects-based analysis should apply to the venue determination of Count 2 (and all other Counts in the Indictment); however the Court has already concluded that such analysis is improper for Section 287 offenses.

13

The Government bears the burden of proving venue is proper by a preponderance of the evidence for every count of the Indictment, and the Court is not satisfied that the Government has met their burden as to Count 2. Accordingly, Defendant's Motion to Change Venue for Count 2 of the Indictment will be granted.

### iii. Counts 3-5: 18 U.S.C. § 1001(a)(3)

Finally, Defendant makes the same argument that venue is not proper in the Middle District of Pennsylvania for Counts 3, 4, and 5 of the Indictment, which charge Defendant with false statements in violation of 18 U.S.C. § 1001(a)(3).[1] Again, the Court begins its analysis by determining the conduct that forms the basis for the offense and again, both Defendant and the Government make the same arguments to advance their positions as they did for Counts 1 and 2. Defendant argues that "the conduct by Hartley that forms the basis for each of the three charges is the completion and submission of the DA Forms 5960." (Doc. 42 at 6). The Government relies on an effects-based venue analysis and contends that Defendant used the allegedly ill-gotten BAQ funds for his own personal use "to pay his bills, buy groceries and merchandise, dine at restaurants, spend at casinos and make cash withdrawals all within the Middle District of Pennsylvania." (Doc. 59 at 29). Defendant does not refute this claim; rather he argues that an effects-based venue analysis

---

[1] Counts 3, 4, and 5 all charge Defendant with false statements in violation of 18 U.S.C. § 1001(a)(3). Each Count charges Defendant with making false statements on a separate DA Form 5960. (Doc. 11 at 6-8).

is "borderline preposterous" because it is based on the theory that "venue is appropriate in a jurisdiction that *benefitted* from a defendant's alleged crimes."  (Doc. 72 at 3).

Section 1001(a)(3) reads:

Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly or willfully makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry shall be fined under this title, imprisoned not more than 5 years . . . or both.

18 U.S.C. § 1001(a)(3).  "Section 1001's 'essential conduct' is making a '*materially* false statement,' rather than merely making any false statement."  *Brennan*, 452 F.Supp.3d at 236. [2]  Congress specifically criminalized only false statements that are material, and "by inserting the word 'materially' into the conduct-focused language of § 1001, Congress 'inherently reference[d] the effects of that conduct.'"  *Id.* at 237 (quoting *United States v. Oceanpro Indus., Ltd.*, 674 F.3d 323, 329-30 (4th Cir. 2012)).  "When materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as

---

[2] There is a circuit split regarding whether the 18 U.S.C. § 1001 permits an effects-based venue analysis.  The First, Second and Fourth Circuits have held that an effects-based analysis is possible and Section 1001's essential conduct element is "making a materially false statement."  *See United States v. Salinas*, 373 F.3d 161, 167 (1st Cir. 2004); *United States v. Colpan*, 703 F.3d 46, 79 (2d Cir. 2012); *United States v. Oceanpro Indus. Ltd.*, 674 F.3d 323, 329 (4th Cir. 2012).  The Tenth and Eleventh Circuits, on the other hand, have determined that venue is proper only where the alleged false statement is made, and not where its effects are felt and thus an effects-based analysis is impermissible.  *See United States v. Smith*, 641 F.3d 1200, 1207 (10th Cir. 2011); *United States v. John*, 477 F. App'x 570, 572 (11th Cir. 2012).  The Third Circuit has not yet ruled on this issue.  District courts within the Third Circuit, however, have contemplated this issue and have determined that the majority position is correct and that an effects-based venue analysis is permissible for Section 1001 violations.  *See Brennan*, 452 F.Supp.3d at 234-37; *United States v. Brassington*, 2010 WL 3982036, at *10-13 (D.N.J. Oct. 8, 2010).

continuing into the district in which the effects of the false statement are felt." *United States v. Brassington*, 2010 WL 3982036, at *12 (D.N.J. Oct. 8, 2010).

Here, Defendant is charged with three counts of false, fictitious, and fraudulent statements in violation of 18 U.S.C. § 1001(a)(3) in connection with alleged false statements made on three DA Forms 5960 Defendant submitted to the Department of the Army "[o]n or about August 21, 2018," "[o]n or about January 1, 2019," and "[o]n or about June 1, 2020." (Doc. 11 at 6-8).  In the Indictment, the Government alleges that Defendant "falsely claims that his dependents resided in Shrewsbury, New Jersey, and had mortgage/rental expenses of $2,200 at that address, when in fact, as the defendant well knew, his dependents resided in Henryville, Pennsylvania." (*Id.*).  Furthermore, the Government states that Defendant allegedly spent his ill-gotten BAQ funds within the Middle District of Pennsylvania, causing it to feel the effects of Defendant's alleged conduct.  (Doc. 59 at 29, 33-34).

Defendant contends that venue is improper in the Middle District of Pennsylvania because it "benefitted" from Defendant's alleged criminal conduct, arguing "[t]he Government has cited no evidence to support that venue is proper based solely on a district *benefitting* from an alleged crime." (Doc. 72 at 1).  Defendant, however, cites no caselaw to support its contention that venue is improper in a district that felt beneficial effects from criminal conduct.  Instead, Defendant cites the cases that the Government cited in its Opposition to Defendant's Motion and characterizes each in terms of the "negative" effects the defendant's criminal conduct had on the district.  (*Id.* at 2-3).  This distinction is purely of

16

Defendant's making and not binding on the Court's analysis.  Courts are not required to parse out whether alleged criminal conduct has had a "positive" or "negative" impact on a district.  An effects-based venue analysis only requires courts to determine whether effects were felt in a particular district and does not require courts to embark on a subjective analysis of whether the alleged criminal conduct somehow benefitted the district.

The Court is satisfied that the Government has proven by a preponderance of the evidence that venue is proper in the Middle District of Pennsylvania because the Government has adequately alleged that the Middle District of Pennsylvania felt the effects of Defendant's conduct as alleged in Counts 3, 4, and 5 of the Indictment.  Accordingly, Defendant's Motion for Change of Venue as to Counts 3, 4, and 5 will be denied.

### iv. Transfer Venue

While Defendant's Motion to Change Venue invokes Rule 18, Rule 21 is also implicated in the Court's analysis.  As discussed above, venue is improper in the Middle District of Pennsylvania for Count 2 of the Indictment, but it is proper for Counts 1, 3, 4, and 5.  The Court must now consider whether to exercise its discretion under Rule 21 and transfer Counts 1, 3, 4, and 5 to the District of New Jersey with Count 2.

Pursuant to Federal Rule of Criminal Procedure 21(b), "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the

witnesses, and in the interest of justice."  The Court of Appeals for the Third Circuit

considered transfer of venue in *In re U.S.*, 273 F.3d 380 (3d Cir. 2001):

> In *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964), a criminal
> antitrust case, the Supreme Court enumerated ten factors that should be
> considered by a court in deciding whether to transfer a case.  They are
>
> > (1) The location of [the] . . . defendant; (2) location of possible
> > witnesses; (3) location of events likely to be in issue; (4) location
> > of documents and records likely to be involved; (5) disruption of
> > defendant's business unless the case is transferred; (6) expense
> > to the parties; (7) location of counsel; (8) relative accessibility of
> > [the] place of trial; (9) docket condition of each district . . .
> > involved; and (10) any other special elements which might affect
> > the transfer."
>
> *Id.* at 243-44, 84 S.Ct. 769 (quotation omitted).

273 F.3d at 387-88.  These factors are considered in both civil and criminal cases.  *See,*

*e.g., United States v. Broussard*, 2020 WL 3839643, at *3 (M.D.Pa. July 8, 2020).  A court is

not required to accompany a transfer order with "a lengthy statement . . . as long as there is

a sufficient explanation of the factors considered, the weight accorded to them, and the

balancing performed."  *In re U.S.*, 273 F.3d at 387.  The decision to grant or deny a motion

to transfer venue under Rule 21 falls within the sound discretion of the district court.  *Martin*

*v. Warden, Huntington State Corr. Inst.*, 653 F.2d 799, 804 (3d Cir. 1981).  The Court will

consider whether transfer is appropriate "based upon the available information contained in

the record."  *See United States v. Burnett*, 2019 WL 109333, at *9 (W.D.Pa. Jan 4, 2019).

First, the Court will consider the location of Defendant and the location of possible

witnesses in this case.  "Although a defendant does not have [a] right to be tried in his or her

home district, within the *Platt* analysis defendant's residence deserves a 'real weight.'" *United States v. Menendez*, 109 F.Supp.3d 720, 726 (D.N.J. 2015) (quoting *United States v. Negron*, 2008 WL 5272056, at *3 (D.N.J. Dec. 16, 2008). The Government alleges that Defendant resides in Henryville, Pennsylvania, which is located in the Middle District of Pennsylvania, and Defendant does not refute this allegation. Defendant's former spouse Hulya and his child Jaylon live in Henryville, Pennsylvania as well. Hulya and Jaylon are possible witnesses because Defendant claimed them as dependents on the Forms 5960 and this case arises out of alleged false statements Defendant made on Forms 5960 regarding the residence of his dependents and Defendant's financial support of his dependents. (*See* Doc. 11). Accordingly, because Defendant and two possible witnesses live in Henryville, Pennsylvania, the first two *Platt* factors weigh in favor of keeping Counts 1, 3, 4, and 5 in the Middle District of Pennsylvania.

The Court next considers the location of events at issue and the location of documents and records likely to be involved in the case. Defendant allegedly prepared and submitted the Forms 5960 from New Jersey but, as described above, the effects of his alleged criminal conduct were felt in the Middle District of Pennsylvania. Because the location of events implicates both the District of New Jersey and the Middle District of Pennsylvania, this factor is neutral. Additionally, the Forms 5960 at issue were filed electronically and they are already in the record, so the location of documents likely involved in this case is a neutral factor in the Court's analysis. (*See* Doc. 41-1; Doc. 59-1; Doc. 59-2;

Doc. 59-3). Therefore, *Platt* factors 3 and 4 neither weigh for nor against transferring Counts 1, 3, 4, and 5 to the District of New Jersey.

Finally, the Court considers the remaining *Platt* factors, which evaluate the disruption to Defendant's business unless transfer is granted, the expense to the parties, the location of counsel, the relative accessibility of the place of trial, the docket condition of each district involved, and any other special elements that could impact the transfer. There are no facts to suggest any business of Defendant would be more significantly impacted by keeping the case in the Middle District of Pennsylvania versus the District of New Jersey, or vice versa. Both the Government's counsel and Defendant's counsel are local attorneys to Scranton, Pennsylvania, which is accessible from all parts of the country with an airport serving the metropolitan area. Although the Court has not conducted a comparison of the docket condition in the districts involved, all courts have experienced backlogs due to the ongoing COVID-19 pandemic and this Court is prepared to proceed to trial on this matter as soon as practicable. On balance, these factors are either neutral or weigh in favor of keeping the remaining counts in the Middle District of Pennsylvania.

Considering other elements which might affect the transfer, Defendant was charged in the Middle District of Pennsylvania in a five-count indictment and the Court is required to transfer only one count to the District of New Jersey due to improper venue. Venue for the remaining four counts is proper in the Middle District of Pennsylvania and, through ruling on

20

Defendant's three pretrial motions (*See* Doc. 36; Doc. 39; Doc. 41), the Court has become very familiar with the case.

Having considered and balanced the relevant *Platt* factors used to determine whether transferring venue is appropriate pursuant to Ruel 21(b), the Court does not find that this case "would be better off transferred to another district." *In re U.S.*, 273 F.3d at 388; *see United States v. Haley*, 504 F.Supp. 1124, 1125 (E.D.Pa. 1981) ("However, the mere fact of proper venue in the district where the Government brings the prosecution does not require that the trial be held therein."). Therefore, the Court will not transfer venue of Counts 1, 3, 4, and 5 and the case against Defendant on these counts will proceed accordingly.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's Motion for Change of Venue will be denied as to Counts 1, 3, 4, and 5 of the Indictment, but will be granted as to Count 2 of the Indictment.

Robert D. Mariani
United States District Judge

21