THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : 3:20-CR-269 |
| v. | : (JUDGE MARIANI) |
| | : |
| **THOMAS HARTLEY,** | : |
| | : |
| Defendant. | : |

**MEMORANDUM OPINION**

FILED
SCRANTON
AUG 0 1 2022
PER _____
DEPUTY CLERK

### I. INTRODUCTION

On March 29, 2022, Defendant was charged in a Superseding Indictment (Doc. 90) with: two counts of theft of government funds in violation of 18 U.S.C. § 641 (Counts 1, 10); four counts of false statements in violation of 18 U.S.C. § 1001(a)(3) (Counts 2, 3, 4, 13); five counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 5, 6, 7, 8, 11); and two counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts 9, 12). (*See generally* Doc. 90). Presently before the Court is Defendant's Motion for Early Disclosure of *Jencks Act* Material and Grand Jury Transcripts (Doc. 122) and Defendant's Motion for the Disclosure of the U.S. Army Declination and *Brady* Material Pursuant to Fed. R. Crim. P. 5(f)(1) and *Brady v. Maryland*, 373 U.S. 83 (1963) (Doc. 84).

### II. MOTION FOR EARLY DISCLOSURE OF JENCKS ACT MATERIAL AND GRAND JURY TRANSCRIPTS

The Jencks Act provides that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement ... of the witness in the possession of the United States

which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). The Jencks Act further provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of a subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). Similarly, the Federal Rules state:

> After a witness other than the defendant has testified on direct examination, the court, on a motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

FED R. CRIM. P. 26.2(a).

Thus, both the Jencks Act and the Federal Rules of Criminal Procedure make clear that the Government does not need to turn over the information requested by Defendant in this case until the witness whose statement is at issue has testified on direct examination at trial. As the Third Circuit stated, "[t]he blunt command of the [Jencks Act] together with the unequivocal legislative history has led to unbroken precedent in the Courts of Appeals denying to district courts the power to compel production of the statements of government witnesses until conclusion of direct examination at the trial." *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978); *see also United States v. Moyer*, 726 F.Supp.2d 498, 513 (M.D.Pa. 2010) (denying Defendant's motion for early production of material under the Jencks Act and finding that, where the Government had agreed to provide the Jencks material three days prior to trial, "[i]t is not within the power of the District Courts to

2

accelerate" the Government's timetable for disclosure); *United States v. Eisenberg*, 773 F.Supp. 662, 683 (D.N.J. 1991) (denying Defendant's motion for disclosure of the pretrial statements of a Government witness prior to that witness's testimony, citing to the Jencks Act and Rule 26.2, and finding that although the Government stated that it would disclose any *Jencks* Act material the day before the witness testified, "it is not required to do so."); *United States v. D'Elia*, 2007 WL 2458487, at *7 (M.D.Pa. Aug. 24, 2007) (denying Defendant's motion under the *Jencks* Act and Rule 26.2 to require the Government to disclose Jencks Act material at least thirty days prior to trial).

Here, the Government has represented that it intends to disclose the Jencks material at issue "to defense counsel three days prior to trial, so as not to cause interruptions during the course of trial." (Doc. 133 at 4). Regardless of whether the statements are ultimately provided before three days before trial or during trial at the time contemplated by the Jencks Act, the case law "makes clear that the Court cannot mandate disclosure prior to the day on which the witness testifies at trial." *United States v. Grier*, 2012 WL 5614087, at * 5 (W.D.Pa. Nov. 5, 2012) *see also United States v. Maury*, 695 F.3d 227, 248 (3d Cir. 2012) ("[T]he government has no obligation to produce Jencks material until the witness has testified."). As such, the Court will deny Defendant's request to compel the Government to produce Jencks material two weeks prior to the start of trial.

In addition to Defendant's request for the disclosure of Jencks material, Defendant "requests that the Government disclose the transcript of the grand jury proceedings for the Indictment and Superseding Indictment." (Doc. 123 at 5).

3

"The secrecy of grand jury proceedings is a necessary incident to the proper functioning of the grand jury system." *United States v. Smith*, 123 F.3d 140, 148 (3d Cir. 1997); *see also Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218 n.9 (1979) ("Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye."). "The party moving for court-ordered disclosure bears a heavy burden of proving to the court that 'the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" *Eisenberg*, 773 F.Supp. 662 at 707 (quoting *Douglas Oil*, 441 U.S. at 222). "To establish 'compelling necessity,' a defendant must show that without the release of the grand jury materials, his 'defense would be greatly prejudiced or ... an injustice would be done.'" *United States v. Ramos*, 2014 WL 3808935, at *4 (E.D.Pa. July 28, 2014) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)); *see also United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989) ("To support a motion for judicially ordered disclosure of grand jury testimony, a party must show a particularized need for that information which outweighs the public interest in secrecy.").

Here, Defendant argues that he has a "particularized need to review these transcripts" because, according to Defendant, the FBI's summary of its interview with Crystal Burgess states that she "provides her opinion as to how Mr. Hartley's BAH would have been calculated, [and] [n]ot once does Ms. Burgess state that his BAH payments would have been calculated based upon the residence of his dependents." (Doc. 123 at 6).

4

Defendant claims "[t]his information thus indicates that the Government understood that the legal basis that it was charging Mr. Hartley under was incorrect prior to the date of the Indictment." (*Id.*).

Defendant's alleged "particularized need" is woefully insufficient to warrant the disclosure of all grand jury transcripts relating to the Indictment and Superseding Indictment. Defendant has not argued anywhere in his Motion that his "defense would be greatly prejudiced" or that "an injustice would be done" if the transcripts are not disclosed, *Procter & Gamble*, 356 U.S. at 682, nor has he argued that the "disclosure need exceeds the need for continued secrecy," *Douglas Oil*, 441 U.S. at 222. Claiming the Government presented insufficient or "incorrect" evidence to the grand jury is not a "compelling necessity" that justifies disclosure of transcripts. *See United States v. Blackwell*, 954 F.Supp. 944, 966 (D.N.J. 1997) ("Conclusory or speculative allegations about what went wrong in a grand jury proceeding give no cause to question the regularity of the grand jury's functioning." (collecting cases)); *see also United States v. Williams*, 504 U.S. 36, 54 (1992) ("'It would run counter to the whole history of the grand jury institution to permit an indictment to be challenged on the ground that there was inadequate or incompetent evidence before the grand jury." (internal citations and quotations omitted)). Defendant also failed to structure his request so as to cover only the material relevant to his concern. Defendant has offered no evidence to justify the disclosure of all grand jury transcripts, and his request is based on speculation as to what one grand jury witness could have offered as testimony. "'[M]ere speculation' that evidence was improperly presented is insufficient to warrant disclosure of

5

the information sought." *Blackwell*, 954 F.Supp. at 967. Accordingly, Defendant has failed to show a particularized, compelling need for the grand jury transcripts.

### III. MOTION FOR THE DISCLOSURE OF THE U.S. ARMY DECLINATION AND *BRADY* MATERIAL PURSUANT TO FED R. CRIM. P. 5(F)(1) AND *BRADY V. MARYLAND*, 373 U.S. 83 (1963) (DOC. 84)

Defendant filed a Motion for the Disclosure of the U.S. Army Declination and *Brady* Material Pursuant to Fed. R. Crim P. 5(f)(1) and *Brady v. Maryland*, 373 U.S. 83 (1963) ("Motion for *Brady* Material") (Doc. 84) in which he argues that the Government "should be compelled to produce all evidence of its adherence and/or failure to adhere to [the Department of Defense Memorandum of Understanding 938 ("DOD MOU")]". (Doc. 85 at 2).

As an initial matter, Defendant's contention that, "[i]f the prosecution failed to honor the joint Understanding with the Department of Defense, the instant prosecution could subject to dismissal with prejudice," (*id.*), is without merit. The DOD MOU explicitly states that it "is not intended to confer any rights, benefits privileges or form of due process procedure upon individuals, associations, corporations or other persons or entities." (Doc. 85-1, Ex. A at § 938(A)).

Defendant's main argument is centered on the following provision of the DOD MOU:

> Frauds Against the Department of Defense and Theft and Embezzlement of Government Property. The Department of Justice and the Department of Defense have investigative responsibility for frauds against the Department of Defense and theft and embezzlement of government property from the Department of Defense. The Department of Defense will investigate frauds against the Department of Defense and theft of government property from the Department of Defense. Whenever a Department of Defense investigative agency identifies a matter which, if developed by investigation, would warrant federal prosecution, it will confer with the U.S. Attorney or the Criminal Division,

6

> the Department of Justice, and the FBI field office. At the time of this initial conference, criminal investigative responsibility will be determined by the Department of Justice in consultation with the Department of Defense.

(Doc. 85-1, Ex. A at § 938 (C)(1)(b)).

Defendant argues that because the Government "claims the instant action was referred to the USAOMDPA by the United States Army," "the USAO should be able to provide to the Court and defense the information demonstrating the Army's declination to prosecute the instant action and the reasons for the declination." (Doc. 85 at 6). Defendant uses the above-cited provision from the DOD MOU to support this claim, but his reading of the statute is erroneous. Nowhere in this provision does it require the United States Army, or the Department of Defense more generally, to "declin[e] to prosecute" a matter prior to the Department of Justice, including the United States Attorney's Office, pursuing an investigation and prosecution into a matter. Instead, the statute unambiguously states that "criminal investigative responsibility will be determined by the Department of Justice in consultation with the Department of Defense." (Doc. 85-1, Ex. A at § 938 (C)(1)(b)).

Defendant's argument proceeds from the false premise that the DOD MOU requires that the DOD "declin[e] to prosecute" as a condition of prosecution of Defendant by the Department of Justice. The DOD MOU provision makes clear that Defendant's allegation that the Army "declin[ed] to prosecute" or was required to "declin[e] to prosecute" Defendant is nothing more than conjecture and speculative argument unsupported by the text of the DOD MOU. Defendant has offered no evidence to substantiate his premise that a

7

"declination" to prosecute exists, is required by the DOD MOU, or that the Government has acted in opposition to the DOD MOU.

The DOD MOU explicitly states that the DOD will refer any investigation to the proper authorities, including the United States Attorney, if a matter would warrant federal prosecution. As represented by the Government, that is exactly what happened here. The Government explains, "in compliance with (C)(1)(b) of the Memorandum, the [Army's] CIC and DOL joint investigation identified potential fraud committed by the defendant and conferred with the U.S. Attorney's Office and the FBI Field Office." (Doc. 110 at 17). Moreover, "the present investigation has been a joint investigation between the Department of Labor (DOL), Office of Special Investigations, and the Department of the Army, Criminal Investigation Command (CIC). The CIC report has been provided to defense counsel." (*Id.* at 16). Although it is not the alleged "declination" he requested (as nothing suggests that such document exists), it appears that the Army's CIC report is the document that would most closely resemble the documents requested by Defendant in the instant Motion.

Defendant also argues that under *Brady*, he is entitled to "any documents [in the Government's possession] which contradict their theory of how BAH is calculated[.]" (Doc. 123 at 5).[1] Defendant does not support this statement with any argument as to how the identified documents are "material either to guilt or punishment." *Brady*, 373 U.S. at 87.

---

[1] Defendant did not include this argument in his Motion for the Disclosure of the U.S. Army Declination and *Brady* Material Pursuant to Fed. R. Crim. P. 5(f)(1) and *Brady v. Maryland*, 373 U.S. 83 (1963) (Doc. 84). Instead, he included this argument in a single paragraph in his Motion for Early Disclosure of Jencks Act Material and Grand Jury Transcripts (Doc. 122).

8

However, as the production of *Brady* material is the Government's burden, the Court will Order the Government to produce any documents in its possession which contradict its assertion as to how BAH is calculated and fall within the purview of *Brady*'s requirement that evidence that is "material either to guilt or punishment" be turned over to the defendant.

## IV. CONCLUSION

For the aforementioned reasons, the Court will deny in part and grant in part Defendant's Motion for Early Disclosure of Jencks Act Material and Grand Jury Transcripts (Doc. 122), to wit, the Court will (1) deny Defendant's request for the early disclosure of Jencks Act material; (2) deny Defendant's request for grand jury transcripts; and (3) grant Defendant's narrow request for *Brady* material such that the Court will Order the Government to provide to Defendant any documents in its possession which contradict the Government's assertion as to how BAH is calculated in accordance with *Brady*'s requirement that documents that are "material to either guilt or punishment" be turned over to the defendant. The Court will deny Defendant's Motion for the Disclosure of the U.S. Army Declination and *Brady* Material Pursuant to Fed. R. Crim. P. 5(f)(1) and *Brady v. Maryland*, 373 U.S. 83 (1963) (Doc. 84); however, to the extent that the Government has any other documents in its possession that are within the scope of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) that it has not yet produced to Defendant, the Court will Order the Government to produce such documents to Defendant.

Robert D. Mariani
United States District Judge